# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EMMA SCHMIDT and HALLIE MEYER | : | |
| Plaintiffs, | : | CASE NO. |
| | : | 3:14-CV-01816-SRU |
| | : | |
| V. | : | |
| | : | |
| CONAGRA FOODS, INC. | : | MAY 26, 2016 |
| Defendant, | | |

## <u>OBJECTION TO MOTION TO COMPEL RESPONSES TO DISCOVERY</u>

Defendant ConAgra Foods, Inc. ("ConAgra") objects to Plaintiffs' May 5, 2016 Motion to Compel Responses to Discovery ("Motion") on two grounds. First, Plaintiffs did not confer with ConAgra with regard to their Revised Requests for Admission or their original or Revised Requests for Production, prior to filing their motion. Second, Plaintiffs did not file a memorandum of law with their motion, and they have not otherwise stated the reason(s) for their disagreement with ConAgra's objections to their Requests for Production and Requests for Admission. ConAgra requests that, to the extent the parties are unable to resolve ConAgra's objections, the Court set a briefing schedule prior to considering Plaintiffs' motion so that ConAgra may be informed of the basis for Plaintiffs' challenge to ConAgra's objections and have an opportunity to respond in substance.

## I.      Procedural History.

Plaintiffs state in the Motion that "attempts have been made to resolve Defendant's objections to Plaintiffs' discovery requests." As noted in Plaintiffs' affidavit, the only conference between the parties pertained to earlier sets of Interrogatories, Requests for

**ORAL ARGUMENT REQUESTED**

Production, and Requests for Admission, which was replaced by the present set of Revised Interrogatories and Requests for Production and Revised Requests for Admission. Moreover, Plaintiffs never conferred with ConAgra with regard to either the original or Revised Requests for Production.

The conference call referenced by the Plaintiffs was held on November 16, 2015 between Plaintiffs' counsel, ConAgra's counsel, and counsel for the plaintiffs in the <u>Coello v. ConAgra</u> matter, 3:15-cv-83 (SRU). During that conference, the plaintiffs agreed to attempt to revise their Interrogatories and Requests for Admission in order to resolve objections. The plaintiffs stated that they would circulate a revised draft which could then be discussed if any requests remained objectionable. This, however, was not done. Instead, on December 23, 2015, Plaintiffs served their Revised Interrogatories and Requests for Production and Revised Requests for Admission. Some of the objectionable aspects of the original Interrogatories, Requests for Production, and Requests for Admission were cured; others, however, remained. On April 6, 2016, ConAgra answered the Revised Interrogatories and Revised Requests for Admission and produced the responsive documents as best it could, given the nature of the Requests.

## II.     The Motion Should Be Denied Because Plaintiffs Did Not Confer with ConAgra on the Objections to the Revised Requests for Production or the Revised Requests for Admission.

Federal Rule of Civil Procedure 37 requires the movant to confer with the objecting party prior to seeking an order regarding discovery objections. (<u>See</u> Fed. R. Civ. P. 37(a)(1).) This was not done with regard to the objections to the Revised Requests for Production or the Revised Requests for Admission. The reason for this requirement is illustrated by ConAgra's objections and responses in this case. Many of ConAgra's objections are directed only to Plaintiffs' use of vague/ambiguous, undefined terms. (<u>See e.g.</u>, Revised Requests for Production Nos. 2, 3, 8, and

10.)  In these instances, ConAgra has objected to the problematic terms and answered to the best of its ability.

For example, Request for Admission No. 2 asks ConAgra to admit that PAM Original was sold "in both DOT-2Q vented and DOT-2Q non-vented containers."  Plaintiffs use the terms "DOT-2Q vented" and "DOT-2Q non-vented" as if they refer to particular containers, which they do not.  Accordingly, ConAgra objected to Plaintiffs' use of these terms and admitted that "PAM was sold in containers that met the DOT-2Q standard and that some of these containers were a vented design and others were not."  ConAgra's response to this Request should render, from Plaintiffs' standpoint, the objection moot.  If it does not, a conference is necessary to discuss why it does not and whether the parties could resolve any remaining concerns by agreement.

Plaintiffs did not confer with ConAgra concerning its objections to the Revised Requests for Production or the Revised Requests for Admission prior to filing the Motion.  Therefore, the Motion is premature and should be denied.  (Fed. R. Civ. P. 37(a)(1).)

### III.  The Motion Should Be Denied Because Plaintiffs Did Not File a Memorandum of Law.

Local Rule of Civil Procedure 7 states that "[a]ny motion involving disputed issues of law shall be accompanied by a written memorandum of law . . . ."  Some, if not all, of ConAgra's objections concern issues of law.[1]  Also, from a practical standpoint, Plaintiffs should be required to provide some explanation of why they believe objections should be overruled so that ConAgra can substantively respond; especially with regard to Requests to which ConAgra

---

[1] For example, Requests for Admission Nos. 5, 6, and 7, and Interrogatory No. 22 directly concern issues of law. ConAgra's objections to many other requests also concern the attorney-client privilege and work product protection, which will also concern issues of law.  ConAgra's other objections are primarily focused on imprecision in the subject discovery request that renders a simple response impossible.  However, depending on Plaintiff's (undisclosed) basis for contesting the objections, these may also implicate disputed issues of law.

objected but nevertheless provided a response.  Plaintiffs did not provide a memorandum of law addressing the reasons why they are asking the Court to overrule ConAgra's objections. Therefore, the Motion should be denied.  (Local R. Civ. P. 7(a)(1) ("Failure to submit a memorandum may be deemed sufficient cause to deny the Motion.").)

**IV.     The Motion Should Be Denied With Regard to the Following Interrogatories for the Reasons Set Forth Herein.**

   **A.  Background**

   In their complaint, Plaintiffs allege that "the PAM cooking spray involved in this fire," which Plaintiffs identified in their Revised Interrogatories to be a container with the following identifying marks: "???1227100L614:38 Best by J?n 20 2014" (the "Spray"), was defective. They allege it was "defective in that it over-pressurized and vented flammable contents."  They do not allege, however, any particular defect in the Spray's design or manufacture.

   Plaintiffs also assert that the warning on the Spray was insufficient.  Plaintiffs base this on a conclusion, unsupported by any factual allegations, that ConAgra "knew of the risk of over-pressurizing and venting of the flammable product."  They do not allege, in any way, how over-pressurization was a "risk," nor do they allege the reason why the Spray allegedly over-pressurized.  Instead, they assert that the Spray should have included additional language, which plaintiffs characterize as "warnings," and that ConAgra "failed to advise purchasers and users of the dangerous condition of the product."[2]

---

[2] ConAgra denies that the Spray was in a "dangerous condition" or that it failed to adequately advise purchasers.

Plaintiffs omit from their allegations the actual language of the warning on the Spray, which states:

> **WARNING**: USE ONLY AS DIRECTED. INTENTIONAL MISUSE BY DELIBERATELY CONCENTRATING AND INHALING THE CONTENTS CAN BE HARMFUL OR FATAL. FLAMMABLE. DO NOT SPRAY ON HEATED SURFACES OR NEAR OPEN FLAME. NEVER SPRAY DIRECTLY INTO OVEN. REMOVE BROILER PANS FROM OVEN BEFORE SPRAYING. CAN MAY BURST IF LEFT ON STOVE OR NEAR HEAT SOURCE. AVOID SPRAYING IN EYES. CONTENTS UNDER PRESSURE. DO NOT PUNCTURE OR INCINERATE. DO NOT STORE ABOVE 120°F. KEEP OUT OF REACH OF CHILDREN.

This is the entirety of the context within which Plaintiffs Revised Interrogatories arise.

## B. Individual Interrogatories

On April 6, 2016, ConAgra served its Objections and Responses to Plaintiffs' Revised first Set of Interrogatories and Production Requests ("Responses") on Plaintiffs to respond to Plaintiffs' Revised Interrogatories to the best of its ability.[3] On April 21, 2016, Plaintiffs sent a letter to Attorney Connors noting their disagreement with ConAgra's objections to several interrogatories. On May 5, 2016, before ConAgra was able to respond, Plaintiffs filed their Motion and attached their April 21, 2016 letter. ConAgra treats the letter as if it were a memorandum in support of Plaintiffs' Motion on these Interrogatories and includes its responses thereto, below.

As a preliminary matter, ConAgra notes that it has not withheld any information or documents on the basis that the documents or information are or contain confidential, proprietary, or trade secret information. However, ConAgra maintained these objections to ensure that there could be no doubt that the information and documents were disclosed subject to the Court's protective order.

---

[3] Plaintiffs stated in Exhibit 4 to the Motion that they submitted a copy of these responses to the Court. Accordingly, ConAgra has not also submitted a duplicate copy.

**Interrogatory No. 1:**

      1.      In accordance with FRCP26(a)(1)(i), provide the name, and if known the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the defendant may use to support its claims or defenses, unless the use would be solely for impeachment.

**Objection:**

    ConAgra objects to this interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege and work product doctrine.

**Discussion:**

    Because Plaintiffs' claims are exceedingly vague, ConAgra cannot now know the identity of each and every individual who may have information that ConAgra may use to support its defenses. ConAgra answered this request by disclosing the individuals who, to the best of ConAgra's present knowledge, may have information concerning the design and/or manufacture of the Spray at issue, which appears to be the focus of Plaintiffs' complaint.

    Plaintiffs assert that given ConAgra's attorney-client privilege / work product objection, ConAgra is required to "describe the nature of the information not provided sufficiently to enable me to assess the applicability of the privilege." This is not accurate. First, the Interrogatory seeks the identification of individuals likely to have *discoverable* information. This does not include individuals who have only information that is subject to the attorney-client privilege or work product doctrine. Second, Federal Rule of Civil Procedure 26(b)(5) does not require the creation of a privilege log to identify individuals who have only privileged or otherwise protected information; it pertains to privileged *documents* withheld. <u>See also</u> Local R. of Civ. P. 26(e) ("This rule shall apply only to requests for documents or electronically stored information."). ConAgra's objections should be sustained.

**Interrogatory No. 2:**

2.    Give the name and addresses of persons known to the Defendant or counsel to be witnesses concerning the facts of the case, indicate whether or not written or recorded statements have been taken from the witnesses, and indicate who has possession of such statements.

**Objection:**

ConAgra objects to this interrogatory as overly broad, vague and ambiguous as to what constitutes the "facts" of this case. ConAgra further objects to this interrogatory insofar as it requests information protected by the attorney/client privilege, attorney work product protection or any other similar privilege and/or protection.  ConAgra further objects to this interrogatory in that it seeks information that is equally available to, or in the possession of, the plaintiffs.

**Discussion:**

Interrogatory No. 2 asks ConAgra to identify persons known to ConAgra to be "witnesses concerning the facts of this case."  As noted in its objection, the reference to the "facts" of this case is vague and ambiguous.  ConAgra does not know who may have been a witness to the incident alleged in the complaint, and due to the vague, conclusory allegations against ConAgra, it cannot determine with any certainty who may have relevant information concerning Plaintiffs' claims.  Accordingly, ConAgra's most accurate response at this point is to refer back to its response to Interrogatory No. 1.

Plaintiffs ask ConAgra to, "confirm you are not withholding any information based on you claim of privilege."  ConAgra cannot do so as, depending on what the "facts" of this case are and what the phrase "witnesses concerning the facts of the case" means, there may be individuals who possess only privileged or otherwise protected information.  ConAgra's objection should be sustained.

**Interrogatory No. 3:**

3.      For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts known to or observed by such witness, or provide a copy of any written or recorded statements taken from such witnesses.

**Objection:**

ConAgra objects to this interrogatory in that it is overly broad and unduly burdensome. ConAgra further objects to this interrogatory as overly broad, vague and ambiguous as to what constitutes the "facts" of this case. ConAgra further objects to this interrogatory insofar as it requests information protected by the attorney/client privilege, attorney work product protection or any other similar privilege and/or protection. ConAgra further objects to this interrogatory in that it seeks information that is equally available to, or in the possession of, the plaintiffs.

**Discussion:**

As stated in response to Interrogatory No. 2, ConAgra is unaware of any statements taken from any witnesses known to ConAgra. Plaintiffs assert that "[i]t should be clear to you what the phrase "facts of the case" means. As described above, it is not, and simply asserting that it should be does not cure the vague and ambiguous nature of the phrase or the complaint.

ConAgra also objected to this interrogatory because it is overbroad and unduly burdensome, and because to answer it would require the disclosure of information protected by the attorney-client privilege and/or, inter alia, work product protection. It is overbroad because, at this point in time, ConAgra does not understand what the Plaintiffs claim to be the "facts of this case," and based upon Plaintiffs' other interrogatories, it appears that the Plaintiffs may consider "the facts of the case" to include the development of aerosol technology, generally. It is unduly burdensome because ConAgra's discovery obligation is to make information available to Plaintiffs, and this obligation does not include creating documents to identify and/or summarize the "important" facts known by "witnesses."

Moreover, the information sought by this Interrogatory, in the form in which it is sought, necessarily implicates the attorney-client privilege and the work product protection, because it asks for ConAgra to determine what individuals know with regard to the facts of this case, a legal conclusion, but also to identify which of these facts are important, a legal conclusion. Plaintiffs do not have a right to ask ConAgra's counsel to interview individuals who may have information relevant to this case and then provide a summary of said interview to Plaintiffs. ConAgra's objections should be sustained.

**Interrogatory No. 4:**

4.     In accordance with FRCP 26(a)(1)(ii), provide a description by category and location – of all documents, electronically stored information and tangible things that the defendant has in its possession, custody, or control and may use to support its claims or defenses unless the use would be solely for impeachment.

**Objection:**

ConAgra objects to this interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege and work product doctrine.

**Discussion:**

Plaintiffs request ConAgra to provide them with a privilege log for all documents ConAgra withheld based on a claim of privilege or protection. ConAgra has provided Plaintiffs with a privilege log that, to the best of ConAgra's knowledge, and as will be supplemented in accordance with Interrogatory No. 6, below, includes all documents ConAgra "may use to support its claims or defenses" that were withheld on the basis of a privilege or protection. As discussed above, however, Plaintiffs claims are vague, and to the extent Plaintiffs provide, or ConAgra obtains, further clarification that will enable ConAgra to understand the claims against it, it will supplement its disclosures.

**Interrogatory No. 6:**

6.  State whether this Defendant or any of its agents, servants, employees or other representatives made any visits to the Meyer home at any time after the fire. If so, please state for each such visit:

> a.  The date of the visit;
>
> b.  The name, address and job title of the person(s) who made such visit;
>
> c.  Attach true and complete copies of any and all written or printed documentation whatsoever which relate to such visit.

**Objection:**

> ConAgra objects to this interrogatory insofar as it requests information protected by the attorney/client privilege, attorney work product protection or any other similar privilege and/or protection. ConAgra further objects to this interrogatory in that the information it seeks that is not protected by a privilege or the work product doctrine is equally available to the plaintiffs.

**Discussion:**

In addition to objecting on the basis of privilege and protection, ConAgra also objected to this interrogatory on the basis that the discoverable information it sought was (and is) equally available to Plaintiffs. (No one visited the Meyer home without advance permission.) ConAgra's only connection to the Meyer home arises solely from ConAgra's efforts to defend itself from the claims against it stemming from the May 13, 2013 incident, at the direction and under the supervision of counsel. ConAgra does not intend to disclose or log its counsel's efforts in this regard as they are subject to the attorney-client privilege and work product protection and arose after claims were asserted against ConAgra. In short, this interrogatory is an attempt to obtain premature expert disclosure / discovery. For these reasons, ConAgra's objections should be sustained.

**Interrogatory No. 7:**

7.     Has this Defendant ever been sued for products liability pertaining to an explosion, venting canister or fires caused by PAM canisters?  If so, state when and where such suit was filed.

**Objection:**

ConAgra objects to this interrogatory on the grounds that it seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. ConAgra further objects to this interrogatory to the extent it presumes facts which have not been established.

**Discussion:**

Plaintiffs claim that the warning on the Spray was inadequate, and possibly also allege that the Spray was in some unspecified way defectively designed and or manufactured, though this is unclear on the face of the complaint.  Whether ConAgra has ever been *sued* with regard to other PAM products is in no way relevant to whether the Spray at issue in this case contained a manufacturing defect.  It is also not relevant to whether the Spray at issue in this case contained a design defect.  Finally, it is not relevant to whether the Spray at issue in this case bore an adequate warning.

The interrogatory merely seeks to discover what some other plaintiff, at some other time, in some other location has said about PAM canisters.  Such information certainly would not be admissible in that it is hearsay, and it is not relevant in that it has nothing to do with this case. Further, Plaintiffs have made no showing, whatsoever, regarding how identifying prior litigation, if any, would lead to the discovery of admissible evidence.  Accordingly, ConAgra's objections should be sustained.

**Interrogatory No. 10:**

10. Please describe all testing and/or research ConAgra performed to ensure that the DOT-2Q vented container identified in the Definitions and Notes, Part J, above was reasonably safe for its intended purposes, including the persons who performed this research or testing. If some other person or entity other than ConAgra performed such research or testing, please identify that person/entity.

**Objection:**

ConAgra objects to this interrogatory in that the phrase "reasonably safe for its intended purposes" is vague and ambiguous because plaintiffs do not specify what these "intended purposes" are. ConAgra further objects to this interrogatory because it is overly broad and unduly burdensome in that there are more efficient means of obtaining the information sought such as witness testimony and/or document production. ConAgra further objects to this interrogatory to the extent it seeks information that is equally available to the plaintiffs. ConAgra further objects to this interrogatory to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information. ConAgra will produce such information, if not otherwise objectionable, only pursuant to the restrictions of a Protective Order entered by the Court.

**Discussion:**

ConAgra responded to this interrogatory to the best of its ability given the fact that Plaintiffs do not state what the "intended purposes" they reference are. Indeed, to the extent Plaintiffs assert that ConAgra's answer as anything less than responsive to this interrogatory, such assertion is indicative of the Plaintiffs' failure to set forth an interrogatory capable of being mutually understood.

ConAgra also objected to this interrogatory on the bases that it was overly broad, unduly burdensome, and sought information equally available to Plaintiffs. Plaintiffs ask ConAgra to describe all testing and/or research performed either by ConAgra or by "some other person or entity other than ConAgra." As stated in ConAgra's interrogatory responses, ConAgra did not design the container at issue. Aerosol technology dates back to at least the early 1900s. ConAgra should not be required to attempt to describe for Plaintiffs the evolution of aerosol technology, or the history of the container manufacturer's development of the container at issue,

nor reasonably could it without consulting equally available sources.  ConAgra's objections

should be sustained.

**Interrogatory No. 11:**

11.    If the defendant claims that the DOT-2Q vented container identified in the Definitions and Notes, Part J, above,  was reasonably safe for its intended purposes, please state the basis for that determination.

**Objection:**

ConAgra objects to this interrogatory in that the phrase "reasonably safe for its intended purposes" is vague and ambiguous because plaintiffs do not specify what these "intended purposes" are.  ConAgra further objects to this interrogatory to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information.  ConAgra will produce such information, if not otherwise objectionable, only pursuant to the restrictions of a Protective Order entered by the Court.

**Discussion:**

ConAgra responded to this interrogatory to the best of its ability given the fact that

Plaintiffs do not state what the "intended purposes" they reference are.  Indeed, to the extent

Plaintiffs assert that ConAgra's answer as anything less than responsive to this interrogatory,

such assertion is indicative of the Plaintiffs' failure to set forth an interrogatory capable of being

mutually understood.  ConAgra's objections should be sustained.

**Interrogatory No. 12:**

12.     Please identify all internal standards ConAgra used to determine that PAM canister identified in the Definitions and Notes, Part J, above was reasonably safe for its intended purposes.

**Objection:**

ConAgra objects to this interrogatory in that the phrase "reasonably safe for its intended purposes" is vague and ambiguous because plaintiffs do not specify what these "intended purposes" are. ConAgra further objects to this interrogatory to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information. ConAgra will produce such information, if not otherwise objectionable, only pursuant to the restrictions of a Protective Order entered by the Court.

**Discussion:**

ConAgra responded to this interrogatory to the best of its ability given the fact that Plaintiffs do not state what the "intended purposes" they reference are. For example, ConAgra's document production included documents containing design specifications for the Spray. Indeed, to the extent Plaintiffs assert that ConAgra's answer as anything less than responsive to this interrogatory, such assertion is indicative of the Plaintiffs' failure to set forth an interrogatory capable of being mutually understood. ConAgra's objections should be sustained.

**Interrogatory No. 13:**

13.    Describe the process by which ConAgra selected the DOT-2Q vented container for PAM, identified in the Definitions and Notes, Part J, above, including in your description whether ConAgra provided the manufacturer with specifications for the container, and information regarding the container contents.

**Objection:**

ConAgra objects to this interrogatory because it is overly broad and unduly burdensome in that there are far more efficient means of obtaining the information sought such as witness testimony and document production. ConAgra further objects to this interrogatory to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information. ConAgra will produce such information, if not otherwise objectionable, only pursuant to the restrictions of a Protective Order entered by the Court.

**Discussion:**

ConAgra provided a description of how ConAgra selected the Two-Piece Container. The fact that this description does not render, from Plaintiffs' point of view, the objections moot, illustrates the propriety of the objection. To the extent that the Plaintiffs desire additional detail, the most appropriate (i.e. least burdensome) form of discovery is to depose the relevant individuals. It would not be appropriate to attempt to accomplish further discovery by (repeatedly) seeking additional information upon clarification of what information the interrogatory was intended to seek. This will only lend itself to a circular pattern of additional description followed by additional requests for even more detail. Plaintiffs have a more efficient form of discovery available to them in the form of depositions. ConAgra's objections should be sustained.

**Interrogatory No. 14:**

14.     For each affirmative defense raised in ConAgra's Answer, listed below, please state the factual basis for the defense and identify all of the documents that support the defense and all persons who have knowledge of the facts underlying the defense.

**Objection:**

ConAgra objects to this interrogatory insofar as it requests information protected by the attorney/client privilege, attorney work product protection or any other similar privilege and/or protection. ConAgra further objects to this interrogatory as is overly broad and unduly burdensome in that the information sought may be discovered by much more efficient means such as deposition and/or document production. ConAgra further objects to this interrogatory in that it calls for a legal conclusion. ConAgra further objects to this interrogatory to the extent it seeks information that is in the possession of or equally available to the plaintiffs. ConAgra further objects to this interrogatory to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information. ConAgra will produce such information, if not otherwise objectionable, only pursuant to the restrictions of a Protective Order entered by the Court.

**Discussion:**

ConAgra objects to this interrogatory on several grounds, however, Plaintiffs appear to only challenge ConAgra's objection that there are more efficient means of discovering the information sought, such as by deposition.[4] In the context of this interrogatory, at this time, it is the depositions of Plaintiffs to which ConAgra is referring. In other words, as stated in the Responses, ConAgra has not yet completed its investigation of this matter, and one thing that ConAgra intends to do is depose the Plaintiffs. However, ConAgra objects to then supplementing its answers to simply repeat facts learned in these depositions as, by that point, all such facts will also be in Plaintiffs possession. Moreover, to the extent any particular fact is determined by ConAgra's counsel to be supportive of any particular, or multiple, special defense(s), such information is protected from disclosure by, inter alia, the work product protection. ConAgra's objections should be sustained.

---

[4] Therefore, ConAgra's other objections should be sustained.

**Interrogatory No. 15:**

15.     State the name, address and job title of the corporation, person(s) and/or employee(s) of this Defendant who are most knowledgeable with regard to any allegation of exploding or venting PAM canisters within the last five (5) years.

**Objection:**

ConAgra objects to this interrogatory as it is overly broad and unduly burdensome in that it is not properly limited in scope.

**Discussion:**

Plaintiffs assert that they are entitled to be told who the most knowledgeable persons are "with regard to any allegation of exploding or venting PAM canisters within the last five (5) years," "for purposes of a 30(b)(6) deposition." First, the assertion that ConAgra must identify the person most knowledgeable for the purpose of a Rule 30(b)(6) deposition is incorrect. To the extent Plaintiffs desire to depose ConAgra (the entity) they must follow the procedure outlined in Rule 30(b)(6), and ConAgra will designate an individual to testify pursuant to the Rule.

ConAgra's principle objection to this interrogatory was that it was overly broad and unduly burdensome because it is not properly limited in scope. First, the time period after the incident alleged in this compliant is not relevant and the identification of persons most knowledgeable about anything after the date of the incident is not reasonably calculated to lead to admissible evidence. Second, the interrogatory is not limited to the product at issue in this case, but rather encompasses "PAM canisters" generally. To the extent the interrogatory is trying to ask for the identification of person(s) who are presently most knowledgeable about whether ConAgra has received any allegation of the product at issue exploding or venting prior to the date of the incident in this case, ConAgra is unaware of such a person. Accordingly, ConAgra responded by stating that to the extent any such allegations were made, its Consumer

Affairs Department would receive such complaints and inquiries regarding the PAM product at issue in this case.

To the extent Plaintiffs intend to depose ConAgra pursuant to Federal Rule of 30(b)(6), they should be required to follow the procedure set forth in that Rule. ConAgra's objections should be sustained.

**Interrogatory No. 16:**

16.     Has any ConAgra employee, or anyone retained by ConAgra, ever performed any research and/or tests to determine the temperature at which a PAM canister will vent, burst, or explode?  If so, identify that person and produce all records and results of the research and/or testing.

**Objection:**

ConAgra objects to this interrogatory as it is vague and ambiguous with regard to its reference to "anyone retained by ConAgra," "any research and/or tests," "a PAM canister," and "the temperature."  ConAgra further objects to this interrogatory in that it is overly broad and unduly burdensome.  ConAgra further objects to this interrogatory to the extent it seeks information and documents that are not in ConAgra's possession, custody, or control.  ConAgra further objects to this interrogatory to the extent it seeks information protected by the attorney-client, work product, or any other privilege or protection.  ConAgra further objects to this interrogatory to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information.  ConAgra will produce such information, if not otherwise objectionable, only pursuant to the restrictions of a Protective Order entered by the Court.

**Discussion:**

Plaintiffs claim that "[w]e specifically discussed the language in these interrogatories when we attempted to resolve the first set of objections.  The outcome of that discussion was that Plaintiffs would attempt to rework the interrogatory and circulate a draft to ConAgra's counsel to determine whether the revision cured the objectionable aspects or whether further revision would be required.  This process was not followed by Plaintiffs.  As a result, the interrogatory remains objectionable.

ConAgra's objection is detailed, but to illustrate the ambiguity consider the terms "a PAM canister" and "the temperature," and the phrase, "any research and/or tests." The term "a PAM canister" is vague and ambiguous because it is unclear whether Plaintiffs are asking referring to the product at issue, some other PAM brand product, the container component of the product at issue, or the container component of some other PAM brand product. The term "the temperature" is vague and ambiguous because it is unclear whether this refers to the effect of temperature on the pressure within the product at issue or the effect of temperature alone on the container in which the product at issue is packaged. Finally, the phrase "any research and/or tests" is vague and ambiguous because it is unclear whether it refers to some form of physical testing of a particular product versus research regarding the known properties of the various components of a particular product. Further, the reference to "anyone retained by ConAgra" is vague and ambiguous because it does not specify for what purpose said "anyone" was retained: e.g. an entity retained to manufacture a component of the product versus an entity retained to physically test a particular PAM product.

Depending on the resolution of these various ambiguities, one or more of the other objections may apply. To the extent Plaintiffs are asking whether ConAgra, or someone on behalf of it, heated a unit of the product at issue until it vented, ConAgra relies on its privilege / work product objections. ConAgra's objections should be sustained.

**<u>Interrogatory No. 17</u>:**

17.     Was ConAgra aware of any research/testing performed by other individuals or entities which determine the temperature at which the DOT-2Q canister identified in the Definitions and Notes, Part J, above would burst, vent, or explode?  If so, identify and produce all records of such research or testing.

**Objection:**

> ConAgra objects to this interrogatory as it is vague and ambiguous with regard to its reference to "any research/testing" and "the temperature."  ConAgra further objects to this interrogatory in that it is overly broad and unduly burdensome.  ConAgra further objects to this interrogatory to the extent it seeks information and documents that are not in ConAgra's possession, custody, or control.  ConAgra further objects to this interrogatory to the extent it seeks information protected by the attorney-client, work product, or any other privilege or protection.  ConAgra further objects to this interrogatory to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information.  ConAgra will produce such information, if not otherwise objectionable, only pursuant to the restrictions of a Protective Order entered by the Court.

**Discussion:**

ConAgra first notes that this particular interrogatory was not discussed during the parties' November 16, 2015 conference.  Plaintiffs chose to skip over it saying they would attempt to revise it.  The revisions did not cure the objectionable aspects.  This interrogatory is phrased in very broad, ambiguous, and vague terms.  Even if Plaintiffs are given the benefit of the doubt with regard to the use of the term "the temperature," in addition to the issues discussed with regard to Interrogatory No. 16, this interrogatory is objectionable because it potentially reaches any and all research conducted in the field of aerosol technology as a whole, that anyone at ConAgra was ever aware, and that could be referenced to calculate the temperature at which the internal pressure of the product at issue would exceed the pressure at which the Two-Piece Container's vents open.  If this is the information which Plaintiffs seek, ConAgra stands on its objections.  If, however, Plaintiffs are trying to ask whether ConAgra was aware of any test in

which a third-party heated the product at issue until it vented, ConAgra relies on its privilege / work product objections. ConAgra's objections should be sustained.

**Interrogatory No. 19:**

19. Why did ConAgra decide to use the 2Q vented container design identified in the Definitions and Notes, Part J, above, over the DOT-E or 2Q non-vented container?

**Objection:**

ConAgra objects to this interrogatory because it is vague and ambiguous in its reference to "the DOT-E . . . non-vented container" "the 2Q non-vented container" as these terms do not identify particular containers. ConAgra further objects to this interrogatory to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information. ConAgra will produce such information, if not otherwise objectionable, only pursuant to the restrictions of a Protective Order entered by the Court.

**Discussion:**

ConAgra objected to this interrogatory because the terms "the DOT-E . . . non-vented container" and "the 2Q non-vented container" are vague and ambiguous. Plaintiffs' only statement in opposition to ConAgra's objection is that "[t]hese terms are not vague or ambiguous." Plaintiffs have done nothing to show that the terms have any reasonably ascertainable meaning, nor could they.

Neither of these terms refer to any particular container. Plaintiffs' reference to "DOT-E" presumably refers to any container that is considered "exempt" by the DOT, which would now be referred to as a container subject to a special permit. This could refer to any number of containers in existence at the time ConAgra decided to use the Two-Piece Can. The same is true with regard to the term "2Q non-vented container." Because of the vague and ambiguous nature of these terms, ConAgra is unable to understand what Plaintiffs are asking and cannot provide a response. ConAgra's objections should be sustained.

**<u>Interrogatory No. 20</u>:**

20.    In 2013, did ConAgra use different PAM canisters for different retail markets or geographic locations, including Canada and if so, why?

**Objection:**

ConAgra objects to this interrogatory because it its reference to "PAM canisters" and "retail markets" is vague and ambiguous.  ConAgra further objects to this interrogatory to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information.  ConAgra will produce such information, if not otherwise objectionable, only pursuant to the restrictions of a Protective Order entered by the Court.

**Discussion:**

To the extent this interrogatory asks whether the 12 oz. PAM Original No-Stick Cooking Spray product at issue in this case is put into containers other than the Two-Piece Can depending on where it will ultimately be sold, ConAgra has answered this interrogatory.  To the extent it attempts to ask something different, ConAgra relies on its objections.

The term "PAM canisters" is vague and ambiguous because it does not define what a PAM canister is.  For example, do Plaintiffs consider two otherwise identical PAM canisters "different" if the net weight is expressed in ounces on one and grams on the other?  Further, do Plaintiffs consider PAM brand products that are different in size to be different "PAM canisters"?  The term "retail markets" is also vague and ambiguous.  Plaintiffs' reference to Canada seems to indicate that they are referring to markets that are different geographically, and that is what was assumed in ConAgra's response, but this could also refer to any number of other market distinctions.

In challenging ConAgra's objection, Plaintiffs merely state that they "would be stunned if ConAgra was unfamiliar with the terms "Pam canisters" and "retail markets."  This is no reason

to overrule ConAgra's objections.[5]  Without clarification on these two terms, it is not possible for ConAgra to provide any response other than that which it already provided.  Therefore, ConAgra's objections should be sustained.

## Interrogatory No. 22:

22. If the canister identified in the Definitions and Notes, Part J, above vented, burst or exploded below the required minimum pressure set forth in 49 CFR Sec. 173.306, without any external force or abuse applied, do you agree that the container failed to meet DOT specifications?  If not, please state the basis for your answer.

**Objection:**

ConAgra objects to this interrogatory because the term "external force or abuse" is vague and ambiguous because, *inter alia*, it is not defined and not terminology used in the DOT regulations.  ConAgra further objects to this interrogatory as it is an improper factual scenario interrogatory calling for ConAgra to answer a hypothetical question not tied to the established facts of this case, and further calling for a pure legal conclusion in determining the scope and application of Department of Transportation regulations. *See Abbott v. United States*, 177 F.R.D. 92, 93-94 (N.D.N.Y. 1997); *see also Kendrick v. Sullivan*, 125 F.R.D. 1, 3 (D.D.C. 1989).  ConAgra further objects to this interrogatory as it calls for speculation.

**Discussion:**

ConAgra objected to this interrogatory on the grounds that (1) the term "external force or abuse" was vague and ambiguous and (2) the interrogatory as a whole was improper as it presented a hypothetical scenario not tied to the facts of this case.  Plaintiffs challenge only ConAgra's second ground, and only with regard to one of the two cases cited in support of it.

ConAgra cited Abbott v. United States, 177 F.R.D. 92, 93-94 (N.D.N.Y. 1997) and Kendrick v. Sullivan, 125 F.R.D. 1, 3 (D.D.C. 1989) in support of its second ground.  In Kendrick, the court held that contention interrogatories, such as this one, are improper when they are based on a hypothetical set of facts:

---

[5] Indeed, this response merely demonstrates *Plaintiffs'* lack of familiarity as to what those terms may refer.

> HHS has served upon plaintiffs what are commonly known as "contention interrogatories." To summarize, the bulk of HHS' interrogatories posit factual scenarios which may r may not exist among participants in the grant program [at issue] . . . . These interrogatories ask whether it is the plaintiffs' "contention" that grants which might mirror these factual scenarios are "unlawful."
>
> . . . .
>
> Absent a concrete factual record . . . any responses which the [respondents] might submit would necessarily amount to free-form legal essays on the Establishment Clause. The essays would bear no necessary relation to the facts of this case. Instead of "the application of law to fact," these responses would involve issues of "pure law," and for that reason are impermissible under Rule 33(b).

125 F.R.D. at 1, 3.

Plaintiffs' Interrogatory No. 22 suffers from the same problem. There are no facts supporting the assertion that the Spray vented "below the required minimum pressure" or that no "external force or abuse" was applied to the Spray. Accordingly, the interrogatory seeks an abstract opinion of what "DOT specifications" require, and therefore, it is impermissible.

Kendrick, 125 F.R.D. at 1, 3; Abbott, 177 F.R.D. at 93-94 (held interrogatory and requests for admission seeking legal conclusion based on hypothetical set of facts were inappropriate)

Plaintiffs assert that this interrogatory does ask ConAgra to respond to a legal question. This is untenable: it asks whether, under certain hypothetical circumstances, DOT specifications are met. This is a legal conclusion. Plaintiffs also assert that "the facts are most certainly connected to this case." However, the interrogatory does not recite any facts, it simply poses a hypothetical that finds no support in the record.[6] Therefore, ConAgra's objections should be sustained.

---

[6] To further illustrate this point, Plaintiffs' complaint does not even allege that the Spray vented below the "required minimum pressure" or that it was not subject to any "external force or abuse."

**Interrogatory No. 25:**

25.     Describe any testing and/or research that was done with respect to any "human factors" involved in the foreseeable use and/or misuse of Pam.

**Objection:**

ConAgra objects to this interrogatory because its references to "any testing and/or research," "human factors," and "misuse of Pam" are vague and ambiguous. ConAgra further objects to this interrogatory in that it is overly broad, unduly burdensome, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. ConAgra further objects to this interrogatory to the extent it seeks disclosure of information not within ConAgra's possession, custody, or control. ConAgra further objects to this request to the extent it seeks information protected by the attorney-client, work product, or any other privilege or protection. ConAgra further objects to this interrogatory to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information. ConAgra will produce such information, if not otherwise objectionable, only pursuant to the restrictions of a Protective Order entered by the Court.

**Discussion:**

ConAgra objected to this interrogatory on the basis that, inter alia, the term "human factors" is vague and ambiguous. That this is the case is undisputable. Its ambiguity is highlighted by Plaintiffs, who enclosed the term in quotation marks in their interrogatory; indicating that the word is used ironically or with some reservation. Further, it is telling that Plaintiffs "oppose" this objection only by stating that they disagree, with no explanation why.[7] Even plaintiffs are unable to explain what they mean by the term "human factors." ConAgra's objections should be sustained.

---

[7] ConAgra also notes that this interrogatory was not discussed during the parties' November 16, 2015 conference.

**V.  Conclusion**

For the foregoing reasons, ConAgra requests that the Court deny Plaintiffs' May 5, 2016 Motion to Compel Responses to Discovery.  In the alternative, ConAgra respectfully requests that the Court set a briefing schedule that requires Plaintiffs to state the reasons why they are requesting the Court to overrule ConAgra's objections[8] so that ConAgra may respond to Plaintiffs' Motion in substance.

THE DEFENDANT,
CONAGRA FOODS, INC.


 /s/ Todd R. Michaelis (ct28821)
Todd R. Michaelis
Federal Bar No. ct28821
Carmody Torrance Sandak & Hennessey LLP
50 Leavenworth Street
P. O. Box 1110
Waterbury, CT 06721-1110
Tel: 203-573-1200
Fax: 203-575-2600
tmichaelis@carmodylaw.com

---

[8] At least with regard to the discovery requests that were not addressed in Plaintiffs' May 5, 2016 letter.

## CERTIFICATION

This is to certify that on May 26, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

     /s/ Todd R. Michaelis (ct28821)
Todd R. Michaelis
